**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **707 FWY INVESTMENTS LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:25-CV-00114-O** |
| | § | |
| **ATEGRITY SPECIALTY INSURANCE** | § | |
| **COMPANY** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

Before the Court are Defendant's Motion for Partial Summary Judgment (ECF No. 26), Brief in Support (ECF No. 27), and Appendix in Support (ECF No. 28) filed on September 29, 2025; Plaintiff's Motion for Partial Summary Judgment (ECF No. 29), Brief in Support (ECF No. 30), and Appendix in Support (ECF No. 31) filed on September 29, 2025; Plaintiff's Response to Defendant's Motion (ECF No. 32), Brief in Support (ECF No. 33), and Appendix in Support (ECF No. 34) filed on October 20, 2025; Defendant's Response to Plaintiff's Motion (ECF No. 35) filed October 22, 2025; Plaintiff's Reply (ECF No. 41) and Appendix in Support (ECF No. 42) filed on December 16, 2025; Defendant's Reply (ECF No. 43) and Appendix in Support (ECF No. 44) filed on December 16, 2025; Defendant's Motion to Strike Plaintiff's Expert Monty Stone (ECF No. 45) filed on December 22, 2025; Plaintiff's Response to Defendant's Motion to Strike (ECF No. 51) filed on December 29, 2025; and Defendant's Reply to its Motion to Strike (ECF No. 55) filed on December 31, 2025. Having reviewed the briefing and applicable case law, Defendant's Motion for Partial Summary Judgment (ECF No. 26) is **GRANTED**, Plaintiff's Motion for Partial

Summary Judgment (ECF No. 29) is **GRANTED in part** and **DENIED in part**, and Defendant's
Motion to Strike (ECF No. 45) is **DENIED**.

## I.    BACKGROUND

This case involves allegations of underpayment and nonpayment under an insurance policy.
Defendant, Ategrity Specialty Insurance Company ("Defendant"), issued Policy No. 01-C-PK-
P20064154-0 to Plaintiff, 707 FWY Investments, LLC ("Plaintiff"), with effective dates of
September 12, 2022, to September 12, 2023 (the "Policy").[1] The Policy covered Plaintiff's
property that Plaintiff leased out to commercial tenants.[2]

On April 14, 2023, the roof partially collapsed,[3] and Plaintiff filed a claim for a partial
collapse and other damage "including but not limited to the supporting concrete tilt walls and steel
bar roof joists."[4] Plaintiffs also claimed damage to the roof's surfacing, sub-surfacing, and the
building interior due to water that entered the structure after several severe wind and rainstorms.[5]

Defendant assigned it a claim number and inspected the property on May 1, 2023.[6] On
May 5, 2023, Defendant sent an engineer from HAAG engineering ("HAAG") to Plaintiff's
Property to evaluate the damage.[7] On May 24, 2025, before HAAG finished its written report,
Defendant issued a denial to Plaintiffs. Defendant cited HAAG's findings as the basis for the
denial,[8] and stated that "inadequate design and inadequate maintenance are not covered causes of
loss under the policy."[9] Plaintiff requested a copy of HAAG's findings, but Defendant refused to

---

[1] Notice of Removal Ex. A (Pl.'s Original Petition) 1, ECF No. 1-4.
[2] Def.'s Br. Supp. Mot. Partial Summ. J. 2, ECF No. 27.
[3] Pl.'s Br. Supp. Mot. Partial Summ. J. 2, ECF No. 30.
[4] Notice of Removal Ex. A (Pl.'s Original Petition) 3, ECF No. 1-4.
[5] *Id.*
[6] *Id.*; Pl.'s Br. Supp. Mot. Partial Summ. J. 2, ECF No. 30.
[7] Notice of Removal Ex. A (Pl.'s Original Petition) 3, ECF No. 1-4; Pl.'s Br. Supp. Mot. Partial Summ. J.
2, ECF No. 30.
[8] *Id.*
[9] Pl.'s Br. Supp. Mot. Partial Summ. J. 2, ECF No. 30.

provide them, claiming it based its findings on an oral report.[10] On or about June 6, 2023, the inspected section of Plaintiff's roof fully collapsed.[11] On September 17, 2023, Defendant internally noted the full collapse and planned to close the claim because the "claim was already denied based on [independent adjuster] observations and [the] engineer further confirmed no covered causes of loss exist."[12]

Meanwhile, Plaintiff hired its own engineer who discovered that joists in the roof were cut, causing the roof to collapse.[13] Allegedly, the commercial tenants leasing out Plaintiff's structure tried to enlarge the garage door of this structure and cut certain joists in the roof doing so, which caused the roof to start to cave in and then fully collapse.[14]

Nearly a year later, on September 12, 2024, the same day that Plaintiff sent Defendant a notice and demand for prompt payment, Defendant re-opened the claim and confirmed that Plaintiff's claim—which it previously denied—was covered by the Policy.[15] Defendant attributes its change to the fact that "new information" from Plaintiff's engineer's report that "the actions of a third-party [] affected the structural integrity of the roof," which is a covered cause of loss.[16]

Defendant sent HAAG back to the property to inspect and provide an estimate for repairs.[17] HAAG concluded 1) that the damage was minimal, 2) that the roof did not need to be fully replaced, and 3) recommended that Defendant tender $300,000[18]—which Plaintiff claims is far less than required.

---

[10] Def.'s Br. Supp. Mot. Partial Summ. J. 2, ECF No. 27; Notice of Removal Ex. A (Pl.'s Original Petition) 4, ECF No. 1-4.
[11] Pl.'s Br. Supp. Mot. Partial Summ. J. 2, ECF No. 30.
[12] *Id.*
[13] Pl.'s Reply 2, ECF No. 41.
[14] Def.'s Br. Supp. Mot. Partial Summ. J. 2, ECF No. 27; Def.'s Reply 4, ECF No. 43.
[15] Pl.'s Br. Supp. Mot. Partial Summ. J. 2, ECF No. 30.
[16] Def.'s Resp. 5, ECF No. 35.
[17] Notice of Removal Ex. A (Pl.'s Original Petition) 5, ECF No. 1-4.
[18] *Id.*

Because Defendant initially denied the claim, Plaintiff alleges it spent over $150,000 in out-of-pocket expenses to temporarily repair and demolish portions of the building and to hire an independent structural engineer.[19] Plaintiff also claims the loss of significant rental income it could have received had Defendant made timely payment.[20] In addition to breach of contract, Plaintiff brought claims under the Texas Insurance Code, Deceptive Trade Practices Act, and common law bad faith.

Plaintiff's extra-contractual claims are that Defendant misrepresented what the policy covered after the loss, performed an unreasonable investigation, and manipulated the investigation to avoid payment.[21] Defendant claims it changed its position once it was made aware that a third-party had severely compromised the stability of the building, which is a covered loss.[22]

Defendant moved for partial summary judgment on Plaintiff's extra-contractual claims, except for the prompt payment statute claim.[23] Defendant "did not move for summary judgment on the breach of contract claim because fact issues exist as to the scope and dollar amount of the covered damages."[24] On the same day, Plaintiff moved for summary judgment on several of Defendant's affirmative defenses. Defendant also filed a motion to strike Plaintiff's expert, Monty Stone, a public adjuster designated to testify on causation.[25] The motions are now ripe for the Court's review.

---

[19] *Id.* at 4.

[20] *Id.*

[21] *Id.* at 4–5.

[22] Def.'s Resp. 2, ECF No. 35.

[23] The prompt payment statute, TEX. INS. CODE § 542.051, requires an underlying breach of contract or finding of liability. *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 819–20 (Tex. 2019). Defendant did not move for judgement on Plaintiff's breach of contract claim.

[24] Def.'s Reply 1, ECF No. 43.

[25] Def.'s Mot. Strike, ECF No. 45.

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 56(a)

The Court may grant summary judgment when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks and citation omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis for its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *Celotex*, 477 U.S. at 323. The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The opposing parties' failure to produce proof as to any essential element of a claim renders all other facts immaterial." *2223 Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, No. 3:17-CV-2795-D, 2019 WL

1583558, at *6 (N.D. Tex. Apr. 12, 2019) (Fitzwater, J.). Summary judgment is mandatory if the parties fail to meet this burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### B. Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony, requiring that testimony be both relevant and reliable. The district court is charged with making this preliminary determination as a gatekeeping function that filters the evidence the trier of fact consider. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. Rule 702 incorporates the principles articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under *Daubert*, expert testimony is admissible only if the proponent, who bears the burden of proof, demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997).

The first requirement is that the expert must be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Rule 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.*

The second requirement is that the expert's testimony must be relevant. Relevant expert testimony "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002). This requirement asks whether an expert's "reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).

The third requirement is that the expert's testimony must be reliable. "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592–93)). *Daubert* lists five non-exhaustive factors to assess the reliability of expert testimony:

1. Whether the theory of technique has been tested;
2. Whether the theory or technique has been subjected to peer review and publication;
3. The known or potential rate of error of the method used;
4. The existence and maintenance of standards and controls in the methodology; and
5. Whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. 593–95. In determining these factors, a district court has wide latitude and considerable discretion. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

## III.    ANALYSIS

### A.  Defendant's Motion for Partial Summary Judgment

Defendant moves for summary judgment against Plaintiff's extra-contractual claims brought under the Deceptive Trade Practices Act, Texas Insurance Code §§ 541.061, 541.060(a)(1), 541.060(a)(2), 541.060(a)(3), 541.060(a)(5), 541.060(a)(7), and common law bad faith.[26] For the reasons stated below, Defendant's motion is **GRANTED**.

---

[26] *See* Def.'s Mot. Partial Summ. J., ECF No. 26.

1. <u>Deceptive Trade Practices Act</u>

As an initial matter, there is a dispute regarding which DTPA claims Plaintiff brings. Defendant argues that Plaintiff fails to specify which claims it brings under the DTPA, but assumes for purposes of its motion that Plaintiff brought claims under §§ 17.50(a)(1)(3) and 17.50(a)(1)(4).[27] In its response, Plaintiff defends claims under both §§ 17.50(a)(1)(3) and 17.50(a)(1)(4).[28] However, Plaintiff's complaint only mentions the § 17.50(a)(1)(3) claim.[29] Therefore, the § 17.50(a)(1)(4) claim cannot be asserted in a summary judgment motion, and the Court only addresses the § 17.50(a)(1)(3) claim. *See Martinez v. Prudential Ins. Co. of Am.*, 615 F. Supp. 3d 519, 541 (S.D. Tex. 2022) (Crane, J.) ("[C]ourts in this circuit routinely decline to consider new claims asserted at the summary-judgment stage of litigation.").

Plaintiff alleges that Defendant acted deceptively and unconscionably under § 17.50(a)(1)(3), using its superior knowledge and control of the claim to mislead Plaintiff.[30] Section 17.50(a)(1)(3) provides a consumer with a basis to sue where an unconscionable action causes economic damage or damages for mental anguish. TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(3). Acting unconscionably means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE ANN. § 17.45(5).

Defendant argues the § 17.50(a)(1)(3) unconscionability claim fails because it sold "a policy which covered exactly what it said it would."[31] Defendant cites to one case: *Mobile Cnty. Mut. Ins. Co. v. Jewell*, 555 S.W.2d 903, 911 (Tex. Civ. App. — El Paso 1977, writ ref'd n.r.e.). It

---

[27] Def.'s Br. Supp. Mot. Partial Summ. J. 10, ECF No. 27.
[28] Pl.'s Resp. 15, ECF No. 33.
[29] Notice of Removal Ex. A (Pl.'s Original Petition) 11, ECF No. 1-4.
[30] Pl.'s Resp. 15, ECF No. 33.
[31] Def.'s Br. Supp. Mot. Partial Summ. J. 10, ECF No. 27.

is unclear why Defendant relies on this case which does not bear on the meaning of unconscionability under § 17.50(a)(1)(3).

Plaintiff cites two cases, but again, neither has anything to do with unconscionability—both concern bad faith claims.[32] Plaintiff points to specific record evidence to support its allegations that "Defendant deliberately withheld material and unfavorable information from its own adjuster, engineer, and the insured to reach its predetermined outcome of the claim . . . ."[33] However, even if all true, the evidence Plaintiff cites cannot satisfy the statutory standard.

A Texas DTPA unconscionability claim requires that the seller take advantage of the consumer at the time of sale, not some later time. *See Tolbert ex. rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 657 F.3d 262, 272 (5th Cir. 2011) ("In any event, the Supreme Court of Texas has held that unconscionability requires that the seller take advantage of lack of knowledge, ability, experience, or capacity of a person *at the time of the sale*." (internal quotation marks and citation omitted) (emphasis in original)); *see also Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (explaining that under the DTPA "unconscionability requires that the seller take advantage of special skills and training at the time of the sale").

Here, Plaintiff's unconscionability claim fails because it is "'premised on conduct that occurred . . . after the inception of coverage under the [Policy].'" *CapLOC LLC v. Liberty Mut. Ins. Europe Limited*, No. 3:20-cv-3372-B, 2021 WL 2551591, at *11 (N.D. Tex. June 22, 2021) (Boyle, J.) (ellipsis and alteration in original) (citing *Tolbert*, 657 F.3d at 272). Plaintiff's allegations that Defendant essentially manufactured the outcome of the investigation "relate[s

---

[32] Pl.'s Resp. 14, ECF No. 33 (citing *Winterfield United Methodist Church v. Church Mut. Ins. Co.*, No. 6:23-cv-558-JDK, 2025 WL 63670 (E.D. Tex. Jan. 9, 2025) (Kernodle, J.) and *First Christian Church Disciples of Christ of Tyler v. Church Mut. Ins. Co.*, No. 6:23-cv-342-JDK-JDL, 2024 WL 3631080 (E.D. Tex. Jul. 10, 2024) (Love, Mag. J.)).
[33] Pl.'s Resp. 14, ECF No. 33.

only] to the handling of [the] claim for coverage—not to the sale of the Policy." *CapLOC LLC*, No. 3:20-cv-3372-B, 2021 WL 2551591, at *11 (N.D. Tex. June 22, 2021) (Boyle, J.). Therefore, Defendant's motion for summary judgment on the DTPA claim is **GRANTED**.

2. Texas Insurance Code §§ 541.060(a)(1) and 541.061

Plaintiff makes claims of misrepresentation under the Texas Insurance Code §§ 541.060(a)(1) and 541.061. Texas Insurance Code § 541.060(a)(1) makes actionable a misrepresentation to a policyholder about a material fact or policy provision related to the coverage at issue. Section 541.061 makes actionable an insurer's misrepresentation of policy provisions. Tex. Ins. Code. Ann. § 541.061.

Plaintiff's misrepresentation claim is essentially this: 1) Defendant lied to its own independent adjuster and engineer before inspection because it misstated the policy when it said partial collapses weren't covered under the policy, and 2) Defendant lied to Plaintiff when it said the damage was not due to a covered cause under the policy.[34] Plaintiff points to evidence that Defendant "told its own independent adjuster that '[p]atrial collapse is not collapse in policy' and never provided him with a copy of the Policy despite [his] request."[35] Moreover, Defendant told the independent adjuster "'[t]here is coverage for collapse, but I don't think it applies by the [independent adjuster's] description (not completely collapsed)."[36]

Defendant argues that Plaintiff's §541.060(a)(1) claims fail for three reasons: 1) the statements being alleged are post-loss statements—*i.e.*, they could not have induced someone to purchase coverage; (2) the statements Plaintiff references are about the facts underlying the loss,

---

[34] *Id.* at 8–9; *see also* Notice of Removal Ex. A (Pl.'s Original Petition) 8, ECF No. 1-4.
[35] Pl.'s Resp. 8, ECF No. 33.
[36] *Id.*

not the coverage or the contract; and 3) Plaintiff cannot show it relied to its detriment on any of the misrepresentations.[37]

Plaintiff responds that "Defendant points to no competent evidence that negates any element of Plaintiff's § 541.060 misrepresentation claims[,]"[38] and argues that post-loss statements are not unqualifiedly barred.[39] Plaintiff's response does not address whether detrimental reliance is a necessary element and fails to defend the § 541.061 claim altogether.[40]

The Court agrees with Defendant for its third reason; Plaintiff's misrepresentation claims fail because Plaintiff nowhere alleges that it did anything differently based on Defendant's misrepresentations.[41] *See ValTex Props. LLC v. Central Mutual Insurance Co.*, No. 3:20-CV-1992-B, 2020 WL 6781944, at *3 (N.D. Tex. Nov. 18, 2020) (Boyle, J.) ("[Plaintiff]'s § 541.060(a)(1) claims fail because [Plaintiff] has not alleged that it relied to its detriment on any of the misrepresentations."); *see also Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 200 (Tex. 1998) (requiring detrimental reliance for misrepresentations under the predecessor to the later-codified Chapter 541 of the Texas Insurance Code); *see also Taboada v. State Farm Lloyds*, No. 2:18-cv-452, 2020 WL 264688, at *3 (S.D. Tex. Jan. 17, 2020) (Ramos, J.) (citing *Provident* for the rule that detrimental reliance is required for misrepresentation claims under § 541.060(a)(1)).

The Court is unaware of and has yet to find any cases applying the detrimental reliance requirement to § 541.061 claims. However, the Court need not resolve that issue because Plaintiff does not defend the § 541.061 claim anywhere in the briefing.[42] And "[t]his circuit's well-settled

---

[37] Def.'s Br. Supp. Partial Mot. Summ. J. 5, ECF No. 27.
[38] Pl.'s Resp. 15, ECF No. 33.
[39] *Id.* at 10.
[40] *See generally* Pl.'s Resp., ECF No. 33.
[41] Def.'s Br. Supp. Partial Mot. Summ. J. 5, ECF No. 27. The Court need not address whether post-loss statements are actionable under the statute.
[42] *See generally* Pl.'s Resp., ECF No. 33.

precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023). Therefore, the Defendant's motion as to Plaintiff's §§ 541.060(a)(1) and 541.061 claims is **GRANTED**.

3. Texas Insurance Code §§ 541.060(a)(2), 541.060(a)(7) and Common Law Bad Faith

Plaintiff brings claims under Texas Insurance Code §§ 541.060(a)(2), 541.060(a)(7) and for common law bad faith. Under § 541.060(a)(2), an insured party has a cause of action when the insurer fails "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code. Ann. § 541.060(a)(2). "The statutory standard is identical to the common-law bad faith standard." *Mid-Century Ins. of Tex. v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002). Under § 541.060(a)(7), an insurer may not "refus[e] to pay a claim without conducting a reasonable investigation with respect to the claim." Tex. Ins. Code. Ann. § 541.060(a)(7).

Because the Court has found there was a bona fide dispute, and for the same reasons discussed *infra—Section III.B.*3., Plaintiff cannot sustain a cause of action predicated on bad faith or unreasonable investigation. *See Patton v. Meridian Sec. Ins. Co.*, 617 F. Supp. 3d 516, 533 (N.D. Tex. Jul. 28, 2022) (Fish, J.) ("If the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith."). Therefore, Defendant's motion as to the §§ 541.060(a)(2), 541.060(a)(7) and common law bad faith claims is **GRANTED**.

4. Section 541.060(a)(3)

The Texas Insurance Code § 541.060(a)(3) makes it an unfair or deceptive act or practice to fail to "promptly provide [] a policyholder a reasonable explanation of the basis in the policy,

in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." Tex. Ins. Code. Ann. § 541.060(a)(3).

Plaintiff argues that Defendant did not provide a reasonable explanation because it "recited generic provisions without applying them to the actual condition of Plaintiff's roof."[43] Moreover, "Defendant did not attach the independent adjuster report or the engineer report [to the denial letter], and the engineer report could not have been attached because it was not finalized until [later]."[44] Plaintiff cites no case law to support its argument. Defendant argues that it did provide a reasonable basis for denial because it has stated the specific policy language at issue.[45] Moreover, Defendant relies on *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, for the proposition that "[t]he statute does not obligate an insurer to provide an insured every piece of information or every written document the insurer has regarding the offer or the investigation." 795 F. Supp. 2d 493, 534 (N.D. Tex. 2011) (Fitzwater, J.) *aff'd*, 709 F.3d 515 (5th Cir. 2013).

The Court is unaware of any case law interpreting § 541.060(a)(3) of the Texas Insurance Code as requiring a Defendant to provide the expert report it used in its denial to avoid liability. Instead, the facts indicate that Defendant's denial letter was at least reasonable because they cited to the relevant excerpts of the policy and explained the factual findings. Therefore, Defendant's motion is **GRANTED** as to the § 541.060(a)(3) claim.

5. Texas Insurance Code § 541.060(a)(5)

The Texas Insurance Code makes actionable "refusing, failing, or unreasonably delaying a settlement offer under applicable first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered." Tex. Ins. Code. Ann. §

---

[43] *Id.* at 20.
[44] *Id.*
[45] Def.'s Br. Supp. Mot. Partial Summ. J. 8, ECF No. 27.

541.060(a)(5). Defendant argues that Plaintiff has no evidence to support this claim because Defendant did not know a third party could have been responsible for the damage until Plaintiff hired its own engineer and provided its report to Defendant.[46] And when Defendant did find out about the actions of third party, it paid the claim.[47]

Plaintiff raises that there is a factual issue as to whether Defendant should have known about the third-party's actions: "[i]f Defendant had conducted a thorough investigation at the outset, it would have discovered the cut joists that caused the structural failure and recognized the covered loss long before Plaintiff was forced to fund its own investigation and determine the cause."[48] While that may be true—whether Defendant should have known is not the factual question for a § 541.060(a)(5) claim.

The Court agrees with Defendant's reliance on *Barron v. Cent. Sur. Co.*, No. 1:22-cv-144-MAC-ZJH, 2024 WL 2807224, at *6 (E.D. Tex. May 9, 2024) (Hawthorn, J.) *report and recommendation adopted*, No. 1:22-cv-144-MAC-ZJH, 2024 WL 3861357 (Crone, J.) that plaintiff has "introduced no evidence establishing that [defendant] attempted to justify its denial of policy benefits on a third party's negligence." Here, the denial letter does not indicate denial for the reason that other coverage may be available or that third parties are responsible for the damage.[49] The denial letter states that "the causes of damage to the roof, inadequate design and inadequate maintenance are not covered causes of loss under the policy."[50] Plaintiff offers no evidence indicating the contrary. Therefore, no material fact issues exist as to this claim, and Defendant's partial motion for summary judgment on § 541.060(a)(5) is **GRANTED**.

---

[46] *Id.* at 13.
[47] *Id.*
[48] Pl.'s Resp. 25, ECF No. 32.
[49] Pl.'s App. Supp. Mot. Partial Summ. J., Ex. F. (denial letter) App. 249, ECF No. 31-6.
[50] *Id.*

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment on Defendant's affirmative defenses of (1) failure to satisfy conditions precedent; (2) policy exclusions; (3) bona fide dispute; (4) concurrent causation; (5) estoppel; (6) waiver; (7) and limitation of punitive and exemplary damages.[51] For the reasons below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

1. Failure to Satisfy Conditions Precedent

Under Federal Rule of Civil Procedure 9(c), a party denying that a condition precedent has occurred must do so with particularity. FED. R. CIV. P. 9(c). In its notice of removal, Defendant asserts as an affirmative defense that not all conditions precedent were satisfied—namely, appraisal.[52] Defendant mentions no other specific conditions precedent.

Plaintiff argues that under the Policy, appraisal is merely optional and not a prerequisite to recovery.[53] Plaintiff adds that "[a]lthough no other specific conditions precedent were named by Defendant . . . Defendant's corporate representative confirmed no other potential conditions precedent were at issue."[54] In its response, Defendant explains that it has since "withdraw[n] [appraisal] as a ground for its defense" because—in Defendant's words—the dispute is "more about the scope of covered damage than amount and appraisal would not be helpful."[55] Therefore Plaintiff's Motion is **GRANTED** as to appraisal.

In its response to Plaintiff's motion, Defendant asserts for the first time that Plaintiff does not satisfy all conditions precedent because Plaintiff failed to mitigate its losses.[56] However,

---

[51] Pl.s' Br. Supp. Partial Mot. Summ. J. 1, ECF No. 30.
[52] Notice of Removal Ex. C (Def.'s Original Ans.) 1, ECF No. 1-6.
[53] Pl.'s Br. Supp. Partial Mot. Summ. J. 5, ECF No. 30.
[54] *Id.*
[55] Def.'s Resp. 3, ECF No. 35.
[56] *Id.*

Defendant never argued this defense in its answer.[57] Because Defendant did not deny that condition precedent with particularity in its answer, it is questionable whether it can be raised in response to a motion for summary judgment. *See* FED. R. CIV. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ."); *see Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983) ("Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal.").

Because Plaintiff does not argue unfair surprise, and responds to Defendant's argument in the briefing, the Court addresses the mitigation condition precedent. Plaintiff cites to deposition testimony from Defendant's corporate representative indicating mitigation is not at issue.[58] Specifically, Plaintiff points to the corporate representative's statement: "[t]hat's correct" in response to the question: "Ategrity is not saying that the plaintiff failed to mitigate its losses, resulting in the claim; correct?"[59] Defendant argues that the corporate representative's statement does not foreclose the argument because the statement could mean "that the insured's failure to mitigate may have *increased* the magnitude of the loss[,]" even if it did not cause it.[60] Defendant also quotes its engineer's statement that if the property had been properly shored—*i.e.*, stabilized— he would not have expected the roof to completely collapse.[61] In response, Plaintiff relies on argues it could not have been expected to act any differently because Defendant's adjuster testified that he did not recommend shoring at the first inspection because the roof did not appear to be in danger of immediate collapse.[62]

---

[57] *See generally* Notice of Removal Ex. C. (Def.'s Original Ans.), ECF No. 1-6.
[58] Pl.'s Br. Supp. Partial Mot. Summ. J. 9, ECF No. 30.
[59] Def.'s Resp. 2–3, ECF No. 35.
[60] *Id.* at 3 (emphasis in original).
[61] *Id.*
[62] Pl.'s Reply 4–5, ECF No. 41.

Because Plaintiff there is genuine issue of material fact regarding the adequacy of its shoring, Plaintiff's motion is **DENIED** as to mitigation of damages. Defendant's mitigation affirmative defense survives this motion.

2. Policy Exclusions

Under Texas law, a policy exclusion is an affirmative defense. *See Standard Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398 (5th Cir. 2010). "The insured bears the initial burden of showing that its loss is covered, while the insurer bears the burden of establishing that a policy exclusion applies." *See Balfour Beatty Constr. L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 509 (5th Cir. 2020). Because Defendant bears the burden of proof on its affirmative defense, Plaintiff is not required to preemptively negate that every policy exclusion applies. *See JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 ("[T]he party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions . . . ."). Rather, Defendant must plead and prove that specific exclusions apply.

In Defendant's answer, Defendant makes the broad statement that even if there was property damage which occurred during the Policy period, it fell under an exclusion.[63] Plaintiff moves for judgment against Defendant on this defense because Defendant failed to plead which of Plaintiff's claims were barred by what exclusions.[64] Plaintiff argues that other than a one-liner in

---

[63] Notice of Removal Ex. C (Def.'s Original Ans.) 3, ECF No. 1-6.
[64] Pl.'s Reply 2, ECF No. 41.

Defendant's answer about structural support not being covered,[65] Defendant "simply copied and pasted the Policy language without any specific allegations."[66]

In Defendant's response, it states that it "never agreed that the foundation and land were covered property" and that "[p]roperty that is not covered property under the Policy, such as foundations and land, are still not covered by the Policy regardless of whether [Defendant] accepts that a covered cause of loss occurred."[67] Defendant points to foundation damage as an exclusion, but then in the same sentence points to its engineer's deposition stating, "there was no damage to the . . . foundation."[68]

Plaintiff does not address whether there was or was not any damage to the foundation, but instead argues "[i]f [Defendant] truly intended to rely on a foundation/land exclusion as a basis for denial or as a live limitation on Plaintiff's recovery, it should have said so in its letters, in its [a]nswer, its discovery responses, or through its corporate representative."[69] Plaintiff claims that "[f]ollowing discovery, it is clear that Defendant does not have any evidence to support this affirmative defense because coverage is not in dispute . . . ."[70] Plaintiff argues that the corporate representative's statements are conclusive that Defendant is not disputing coverage under the Policy for this claim.[71] Plaintiff's point is well-taken, but since Plaintiff does not contest whether the foundation was damaged, the Court accepts Defendant's version of the facts as true.

---

[65] The only specific reference to a policy exclusion in Defendant's answer is that "it was not the weight of rain that caused the collapse, but rather the removal of a structural support for which coverage is excluded." Notice of Removal Ex. C (Def.'s Original Ans.) 5, ECF No. 1-6. This statement does not align with any of Defendant's subsequent briefing or its letter accepting the claim. *See* Pl.'s App. Supp. Partial Mot. Summ. J. Ex. H (Second Letter from Ategrity insurance Company) App. 259–63, ECF No. 31-8 (finding coverage). Therefore, Defendant has abandoned this argument.

[66] Pl.'s Br. Supp. Partial Mot. Summ. J. 10, ECF No. 30.

[67] Def.'s Resp. 4, ECF No. 35.

[68] *Id.*; Def.'s App. Supp. Mot. Partial Summ. J. Ex. C (Teasdale Dep.) 91:8–16, App. 058, ECF No. 28-1.

[69] Pl.'s Reply 6, ECF No. 41.

[70] *Id.*

[71] *Id.*

18

Further, if there is no damage to the foundation, then it is unclear why Defendant ever asserted that an exception for foundation damage would apply. Under the Policy's section titled "Property Not Covered," subsection "g" specifies that "[f]oundations of buildings, structures, machinery or boilers if their foundations are below: (1) [t]he lowest basement floor; or (2) [t]he surface of the ground, if there is no basement" are not covered.[72] Since there is no damage to the foundation, the exception regarding foundations does not apply.

Defendant also contends that "Plaintiff is conflating the acceptance portion of the claim, with the acceptance of all of Plaintiff's claimed damage" and that "[e]ven though this case is about the dollar amount of the covered damage, in part, it is also about the scope of the damage from collapse."[73] If this case really is about what is in the scope of certain policy exclusions, Defendant has failed to argue so.

If there are any other relevant policy exclusions, Defendant has not raised them before the Court and has failed to produce any significant probative evidence demonstrating a triable fact as their applicability. Plaintiff argues "[a]t this stage, 'copy and paste' is not enough. Ategrity has had every opportunity in its Answer, discovery responses, and now its Response to this motion to say, plainly, which specific provision it is relying on and how it applies."[74] The Court agrees. Therefore, Plaintiff's motion as policy exclusions is **GRANTED**.

3. <u>Bona Fide Dispute</u>

"Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *See Blueitt v. Crestbrook Ins. Co.*, 643 F. Supp. 3d 651, 658 (N.D. Tex. 2022) (O'Connor, J.) (citing *Arnold v. National Cnty. Mut. Fire Ins. Co.*, 725

---

[72] Pl.'s App. Supp. Mot. Partial Summ. J. Ex. B (Policy) App. 142, ECF No. 31-2.
[73] Def.'s Resp. 4, ECF No. 35.
[74] Pl.'s Reply 6, ECF No. 41.

S.W.2d 165, 167 (Tex. 1987)). An insurer breaches this duty if it denied a claim when its liability had "become reasonably clear." *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *Id.* Further, the bona fide dispute rule is not a true affirmative defense because the insured party—here, Plaintiff—bears the burden to show the absence of a bona fide dispute.

The bad faith inquiry is determined by viewing the facts available to the insurer at the time the claim was denied. *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990). Bad faith does not focus on the validity of the claim but, rather, on the "reasonableness of the insurer's conduct in rejecting the claim." *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993). If the insurer's conduct is reasonable, it will not be liable for bad faith even where the basis for its determination "is eventually determined by the factfinder to be erroneous." *Id.* at 600. "In other words, a genuine dispute over the scope of insurance coverage is an inherently reasonable basis for denying coverage." *Irving v. Meridian Sec. Ins. Co.,* 649 F. Supp. 3d 293, 298 (N.D. Tex. 2022) (O'Connor, J.).

The test is objective and asks whether "a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." *Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*, No. 7:12-cv-00133-O, 2014 WL 3406686, at *19 (N.D. Tex. July 14, 2014) (O'Connor, J.) (quoting *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp. 2d 801, 807 (N.D. Tex. 2010)). However, the Texas Supreme Court has "never held that the mere fact that an insurer relies upon an expert's report to deny a claim automatically forecloses bad faith recovery as a matter of law." *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). "Instead, [the Texas Supreme Court has] repeatedly acknowledged that an insurer's reliance upon an expert's report, standing alone, will not necessarily shield the carrier if there is evidence that the report was

not objectively prepared or the insurer's reliance on the report was unreasonable." *Id.* (citing *Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993)).

Plaintiff argues there is no bona fide dispute because Defendant performed an unreasonable investigation, with the intention of denying Plaintiff's claim, and withheld and misrepresented material information regarding Plaintiff's claim.[75] As support, Plaintiff points to evidence showing that Defendant told the independent adjuster and engineer investigating the loss that partial collapses weren't covered under the policy—which is an objectively untrue statement about the Policy.[76] Also, the claim was denied nearly a month before the written report was finalized.[77] When these investigations led to a denial, Plaintiff requested the engineering report that allegedly formed the basis for Defendant's denial.[78] Plaintiff was refused access because Defendant said the report was internal work product that was "not distributable currently."[79] Defendant's corporate representative agrees with Plaintiff that the findings were not attached to the denial letter and that they should have been shared.[80] Later, after the roof completely collapsed, Plaintiff hired an expert who discovered that the cause of the collapse was actually cuts made to the roof joists—a cause that would have been covered all along.[81] Plaintiff also cites to deposition testimony from Defendant's engineer admitting that nothing should have prevented him from identifying the cut joists as the true cause of the collapse in his investigation.[82] Plaintiff argues this evidence suggests the investigation was pretextual and therefore, unreasonable.

---

[75] Pl.'s Br. Supp. Mot. Partial Summ. J. 12, ECF No. 30.
[76] *Id.*
[77] Pl.'s Resp. 26, ECF No. 32.
[78] Pl.'s Br. Supp. Mot. Partial Summ. J. 12, ECF No. 30.
[79] *Id.*
[80] *Id.*
[81] Pl.'s Resp. 23, ECF No. 32.
[82] *Id.*

Defendant argues that it was not aware of the true cause of loss—the third-party affecting the structural integrity of the roof—until Plaintiff sent its pre-suit letter.[83] Further, Defendant contends that it was merely relying on the opinion of its expert and once it was aware of cuts to the roof joists, it changed its position.[84] Defendant suggests Plaintiff may have known about the cut joists and did not tell Defendant until later—although, this fact is disputed.[85] Defendant was under no obligation at law or under the policy to provide a copy of the expert's report.[86] Lastly, Defendant argues that it does not matter if the engineer was told a lie about partial collapses because the engineer testified that he is not involved in coverage determinations and does not pay attention to comments about coverage if they are made.[87]

In their briefing, the parties also largely debate the application of one case: *Marshall Mall Invs. LP v. Allied Prop. & Cas. Ins. Co.*, No. 2:21-CV-00109-RWS, 2023 WL 3686841, at *2 (E.D. Tex. Mar. 1, 2023) (Schroeder, J.). However, that case is of little help because there, the plaintiff proffered an argument that in its entirety read, "[t]he bona fide dispute rule is not an affirmative defense." *Id.* The court held that Plaintiff failed to form a fully developed argument that shows there is no genuine dispute as to any material fact. *Id.*

In contrast, Plaintiff in this case has put forward specific facts to support its theory. But Plaintiff's allegations, even if taken as true, do not necessarily create a genuine issue of material fact. Here, Plaintiff argues that Defendant tried to influence the adjusters because it falsely stated that partial collapses are not covered under the policy. Defendant counters that it does not matter what false information about coverage was communicated to the engineers or adjusters, because

---

[83] Def.'s Resp. 5, ECF No. 35.
[84] *Id.*
[85] *Id.* at 6.
[86] *Id.*
[87] *Id.*

they only make findings but not the ultimate coverage decision.[88] But, Defendant should have highlighted that the statement about partial collapses is immaterial because the claim was never denied for falling short of a full collapse.[89] The denial letter states that "the causes of damage to the roof, inadequate design and inadequate maintenance are not covered causes of loss under the policy."[90] No reasonable inference can be made that the statement about partial collapses not being covered—a *type* of loss—could have influenced the engineer to get the *cause* of the loss incorrect.

Additionally, the engineer's testimony that he saw no reason why he could not have discovered the cut joists beforehand does not tend to show bad faith. *See, e.g. Irving v. Meridian Sec. Ins. Co.*, 649. F. Supp. 3d 293 (N.D. Tex. 2022) (O'Connor, J.) (holding that even a "lack of knowledge, perhaps even his admitted incompetence is arguably a reasonable basis . . . to deny or delay payment"). Of course, an insurer cannot request its inspectors to ignore blatant realities and shield itself from bad faith accusations by claiming a lack of knowledge. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 n.5 (Tex. 1997) ("An insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear." (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987))). But here, Plaintiff has failed to show what Defendant's engineer could have done or should have done in its original investigation to find the cut joists. *See Humphries v State Farm Lloyds*, No. 3:20-cv-01163-X, 2022 WL 705860, at *7–9 (N.D. Tex. 2022) (Starr, J.) (no evidence of bad faith where plaintiff merely asserted the investigation was outcome oriented and pretextual and offered no expert testimony, proof of standard industry practice, or legal authority to support their claim).

---

[88] Def.'s Resp. 7, ECF No. 35.
[89] Pl.'s App. Supp. Mot. Partial Summ. J., Ex. F. (denial letter) 249, ECF No. 31-6.
[90] *Id.*

Lastly, Plaintiff points to Defendant's failure to disclose the engineering report. Defendant argues that neither the law nor the Policy mandated it to share the report with Plaintiffs,[91] but this is unavailing. Just because Defendant was not required to share it does not mean failure to do so cannot reveal bias or bad faith.

Plaintiff cites two cases where a district court has held that an insurance company's failure to provide a report—despite any requirement that it must—was evidence of bad faith. *See Winterfield United Methodist Church v. Church Mut. Ins. Co., S.I.*, No. 6:23-cv-558-JDK, 2024 WL 5356135, at *9 (E.D. Tex. Dec. 17, 2024) (Love, J.), *report and recommendation adopted*, No. 6:23-cv-558-JDK, 2025 WL 63670 (E.D. Tex. Jan. 9, 2025) (Kernodle, J.); *see also First Christian Church of Tyler v. Church Mut. Ins. Co.*, No. 6:23-cv-342-JDK-JDL, 2024 WL 3631080, at *6 (E.D. Tex. Jul. 10, 2024) (Love, J.), *report and recommendation adopted*, No. 6:23-cv-342-JDK, 2024 WL 3625833 (Kernodle, J.). However, in both cases, the courts noted that "only disclosing favorable information about a claim when the insurer knows of potentially unfavorable information is evidence of bias." *Winterfield United Methodist Church*, 2024 WL 5356135, at *9; *accord First Christian Church of Tyler*, 2024 WL 3631080, at *6; *see also Christian Heritage School v. Central Mut. Ins. Co.*, No. 6:24-cv-45-JDK-JDL, 2025 WL 1341893, at *13 (Love, J.), *report and recommendation adopted*, No. 6:24-cv-45-JDK-JDL, 2025 WL 1337537 (Kernodle, J.) ("Moreover, the fact that the defendant withheld unfavorable information alone, did not dictate the court's decision." (internal quotations and citations omitted)). Here, Plaintiff has failed to point toward any facts indicating the report included potentially unfavorable information or anything else to suggest that this was done in bad faith. Absent other evidence, Plaintiff fails to demonstrate the lack of a bona fide dispute.

---

[91] Def.'s Resp. 6, ECF No. 35.

Therefore, Plaintiff's motion for summary judgment is **DENIED** because Plaintiff fails to show that the expert report supporting initial denial was not objectively prepared or that the insurer's reliance on it was unreasonable.

4. Concurrent Causation

Under Texas law, "the doctrine of concurrent causation is not an affirmative defense or an avoidance issue; rather, it is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove their damage is covered by the policy." *Markel American Ins. Co. v. Lennar Corp.*, 342 S.W.3d 704, 709 (Tex. Civ. App. — Houston [14th Dist.] 2011). "The insured must attempt to segregate the loss caused by the covered peril from the loss caused by the uncovered peril and secure a jury finding on the amount of damage attributable to the different causes." *Id.*

Plaintiff argues that testimony from Defendant's corporate representative confirms that concurrent causation is not at issue in this claim.[92] Defendant responds that "Plaintiff is using the corporate representative's statement concerning the accepted scope of loss, as applying to Plaintiff's entire claim."[93] Defendant also contends that it was "unable to complete the deposition of Plaintiff's expert, Monty Stone, because of scheduling constraints. [Defendant] is not arguing concurrent causation exists preventing recover [sic] to accepted [sic] portion of the claim, and it has already paid that."[94] Defendant then offers that "[a]fter the conclusion of Monty Stone's deposition, [Defendant] will consider if this affirmative defense is moot, but it is premature at this time to say [Defendant] should be precluded from asserting it."[95]

---

[92] Pl.'s Br. Supp. Mot. Partial Summ. J. 9, ECF No. 30.
[93] Def.'s Resp. 7, ECF No. 35
[94] *Id.*
[95] *Id.* at 8.

The Court declines Defendant's request to delay ruling on this issue. "To obtain a continuance of a motion for summary judgment in order to obtain further discovery, a party must indicate to the court by some statement . . . why he needs additional discovery and how the additional discovery will create a genuine issue of material fact." *Krim v. BancTexas Group*, 989 F.2d 1435, 1442 (5th Cir. 1993). "The nonmoving party 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts.'" *Id.* (citing *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). "If it appears that further discovery will not produce evidence creating a genuine issue of material fact, the district court may, in the exercise of its discretion, grant summary judgment." *Krim*, 989 F.2d at 1442. Defendant has presented no meaningful argument for why it needs to conduct additional discovery, or what it expects to discover. Moreover, it appears that since filing its response, Defendant has deposed Monty Stone.[96] Therefore, Plaintiff's motion for summary judgment is **GRANTED**.

5. <u>Estoppel and Waiver</u>

Defendant asserted affirmative defenses of estoppel and waiver in its answer, on which Plaintiff now moves for summary judgment.[97] Defendant responds that these weren't intended to be affirmative defenses—they were only included "to provide notice to Plaintiff that Plaintiff cannot use the doctrines . . . to change, re-write, or enlarge risks covered by a policy."[98] Since these defenses were only pleaded out of an abundance of caution and Defendant offers no other explanation for them, Plaintiff's motion for summary judgment as to estoppel and waiver is **GRANTED**.

---

[96] Pl.'s Resp. to Mot. Strike, Ex. A (Monty Stone Dep), ECF No. 51-1.
[97] Notice of Removal Ex. C (Def.'s Original Ans.) 3, ECF No. 1-6 (citing *Ulico Cas. Co. v. Allied Pilots Assoc.*, 262 S.W.3d 773, 778–79 (Tex. 2008) (discussing the "*Wilkinson*" exception from *Farmers Texas County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520 (Tex. Civ. App. — Austin 1980, writ ref'd n.r.e.))).
[98] Def.'s Resp. 8, ECF No. 35.

6. <u>Limitation of Punitive and Exemplary Damages</u>

In its answer, Defendant asserts as an affirmative defense several caps on damages amounts.[99] Defendant names one cap on exemplary damages, which is irrelevant given the Court's finding of summary judgment against Plaintiff's extra-contractual claims. *See* Tex. Civ. Prac. & Rem. Code § 41.003(a) (exemplary damages may be awarded where there is clear and convincing evidence of fraud, malice, or gross negligence). The other damages caps which Defendant asserts are merely statements of law, and not affirmative defenses. Therefore, Plaintiff's motion for summary judgment is **GRANTED**.

### C.  Motion to Strike Plaintiff's Expert Monty Stone

Plaintiff designated Monty Stone to testify as an expert in damages and causation. Defendant moves to strike Monty Stone's opinions on causation—but not damages—arguing 1) he is not qualified, and 2) his testimony is not based on a reliable methodology.[100]

Defendant's argument that Stone is unqualified rests on the fact he is not an engineer—he is a public adjuster—and "working closely" with engineers is an insufficient basis to make one an expert in engineering.[101] Defendant also points to the fact that Stone was not certified as a roof consultant or a roof observer at the time of the loss.[102] Plaintiff responds that 1) Stone has been upheld has an expert in the face of nearly identical challenges, and 2) Defendant's quibble is better suited for cross-examination.[103]

Under Federal Rule of Civil Procedure 702, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Although Defendant

---

[99] Notice of Removal Ex. C (Def.'s Original Ans.) 3, ECF No. 1-6.
[100] *See generally* Def.'s Mot. Strike, ECF No. 45.
[101] Def.'s Mot. Strike 4, ECF No. 45.
[102] *Id.*
[103] Pl.'s Resp. to Mot. Strike 1–2, ECF No. 51.

makes an argument based on Stone's lack of schooling, that is only one among many ways to be qualified. *See Patton v. Metropolitan Lloyds Ins. Co. of Texas*, No. 5:21-cv-074-H, 2022 WL 2898946, at *4 (N.D. Tex. Feb. 14, 2022) (Hendrix, J.) (denying an identical expert qualification challenge as to Monty Stone because despite not being an engineer, Stone had more than eighteen years of experience). And while he is not currently licensed, he has been in the past and has extensive work experience and training with identifying damage causation, reasonable repairs, and reasonable costs.[104] Stone was also formerly a HAAG Certified Roof Inspector—the same company for which Defendant's causation expert David Teasdale works.[105] Because Stone is not required to be an engineer to testify as to causation, Defendant's arguments regarding Stone's experience are better suited for cross-examination, rather than a challenge based on qualification.

Defendant also objects to the reliability of Stone's testimony, arguing that he provides only "[g]eneral statements without concrete examples" which amounts to "*ipse dixit*[.]"[106] Plaintiff argues that "Defendant offers no comparison to other methodologies"[107] and that Defendant's own engineer relied on the same methodology—visual inspection—and performed no testing.[108] *See also Gun Barrell Jacksonville LLC v. Depositors Ins. Co.*¸ No. 6:20-cv-469-JDK, 2021 WL 5154218, *3 (N.D. Tex. Oct. 9, 2021) (Kernodle, J.) (motion to strike denied when expert opinion was based on "physical inspection of the property; [an] engineering report and exhibits; [his] own experience, knowledge, skill and training; [his] assessment of the property and damage"). Defendant presents no other reason for the Court to believe Stone's physical inspection is not a

---

[104] *Id.* at 6.
[105] *Id.*
[106] Def.'s Mot. Strike 6, ECF No. 45.
[107] Pl.'s Resp. to Mot. Strike 6, ECF No. 51.
[108] *Id.* at 2.

proper methodology. In light of this, the Court finds no reason to think Stone's methodology is unreliable.

Therefore, the Court agrees with Plaintiff that "Defendant's Motion essentially argues that their expert is more credible than Plaintiff's . . . ."[109] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the tradition and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 at 596. Defendant's motion to strike expert Monty Stone is **DENIED**.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion for Partial Summary Judgment (ECF No. 26) is **GRANTED**. Plaintiff's Motion for Partial Summary Judgment (ECF No. 29) is **GRANTED** as to Defendant's affirmative defenses of policy exclusions, concurrent causation, estoppel, and waiver, and **DENIED** as to the existence of a bona fide dispute and the condition precedent of mitigation. And Defendant's Motion to Strike (ECF No. 45) is **DENIED**.

Because this Order comes after the parties submitted their proposed pretrial order (ECF No. 58), the parties are **REQUIRED** to re-submit their proposed pretrial order **no later than January 16, 2026**. Specifically, the Court **ORDERS** the parties to explain what triable issue of fact remains under the breach of contract claim and the mitigation affirmative defense.

**SO ORDERED** on this **9th day** of **January 2026**.

Reed O'Connor

**CHIEF UNITED STATES DISTRICT JUDGE**

---

[109] *Id.* at 5.